Joseph Blaz SANCHEZ,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–119.

Supreme Court of Wyoming.

March 25, 1988.

Rehearing Denied April 15, 1988.

## II

"The failure of the State to comply with the provisions of § 6–2–309, W.S.1977, as amended, resulted in a denial of due process of law in violation of appellant's rights pursuant to Article 1, Section 6 of the Wyoming Constitution and 14th Amendment to the United States Constitution to due process of law.

## III

"The trial court committed plain error by improperly instructing the jury on the elements of the offense and by failing to instruct the jury correctly on the element of intent, and on consent, threat and compulsion.

## IV

"There was insufficient evidence to support the conviction."

We affirm.

On April 28, 1986, the victim, a thirty-five year old Colorado woman, left Torrington, Wyoming, to travel home to Denver, after having completed an installation job of draperies at the St. Joseph's Children's Home. Intending to call a friend to inform him that she was on her way, she stopped in Hawk Springs to find a telephone. She pulled off the road where a gas station, bar and grocery store were located. The gas station and bar were both closed, and she did not immediately see a telephone. She asked a man standing near the gas pumps if there was a telephone in the area; he indicated there was one located at the end of the bar. After parking her car she found the telephone booth. There was another man, appellant, in the booth apparently using the phone. She gestured to him to determine how long he would be, and he indicated he would not be long. The victim returned to her car to wait until appellant finished his call. Meanwhile, the man who had given her directions to the phone came around in a car and asked if she had found the phone. She responded in the affirmative, and the man drove away toward Torrington.

Max A. Wilson, Denver, Colo., and Jay Brammer, Greeley, Colo., for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Terry Armitage, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., THOMAS, CARDINE and MACY, JJ., and GUTHRIE, J. (Retired).

BROWN, Chief Justice.

This criminal appeal challenges appellant Joseph Blaz Sanchez's conviction and sentence for first degree sexual assault. Appellant raises four issues on appeal:

## I

"The trial court erred in admitting irrelevant and highly prejudicial photographs which indicated past conduct of the Defendant where at the time of admission the photographs had no other probative value.

Appellant then appeared on the porch of the bar. The victim got out of her car and walked toward the phone. As she passed appellant she thanked him, to which he replied, "Why don't you come see me when you are done?" The victim did not respond, but went to make her call which, according to her telephone bill, occurred at 10:12 p.m. and lasted until 10:14 p.m.

As the victim returned to her car after using the phone, appellant appeared by her car door, grabbed the door handle and pushed the victim into her car. She screamed and bit appellant's hand as he pushed on her. Appellant bit the victim on the nose. He got in the car, sat beside her in the driver's seat, closed the door and attempted to start the car. Failing at this, appellant pushed the victim over the console and onto the passenger side.

The victim asked appellant what he planned to do; appellant repeatedly said, " * * * Shut up. Shut up. I will stab you. Shut up. * * * Shut up or I will hit you. Shut up. * * * " Appellant never exhibited a knife, nor did he hit the victim. The victim attempted to resist, saying to appellant, "You wouldn't want this to happen to your girlfriend or your wife or your mother, would you?" She also attempted to offer appellant money. Appellant told the victim that he was not going to rape her, but that "I just want to see your pussy." The victim said, "No, please," but appellant repeated his threats.

Finally, the victim offered to make a deal with appellant; if appellant would agree to only look at her genital area and then leave, she would show it to him. They shook hands, and the victim began to lift her skirt. At trial the following colloquy took place describing the events that followed:

"A. * * * [A]t this point I started pulling up my skirt, and at this point he proceeded to stick his hand up my vagina, and I said, 'I have my period. I have a tampax up there. It is really gross. You don't want to do that.' And he said, 'No, you don't. No, you don't.' And I said, 'Yes, I do.' And then at that point he stuck his hand up there, and he must

have felt my tampax because I did have my period at that time, and then that's when he said 'Why don't we just forget this.' He said, 'Why don't'—

"Q. Well, did you feel any kind of penetration into your vagina?

"A. Yes.

"Q. Can you try to describe what you felt?

"A. It was a real shoving because I had a tampax up there, and he was forcing his hand and forcing his finger up my vagina."

At that point, appellant left the car and disappeared between the bar and grocery store buildings.

The victim left the area and proceeded to Cheyenne where she stopped at a truck stop, asked the attendant to fill up the car and went inside to telephone her friend in Denver. After the call she broke down. The attendant asked her what was wrong, to which she replied that she had just been attacked in her car. The attendant went into the truck stop and telephoned the sheriff's department. Two deputies arrived to interview the victim. During the interview, the deputies elicited information about the assault and a description of the assailant. In a written statement, the victim described the assailant as: "[A man with] dark, short hair, mustache, jeans, and a light jacket with pockets in front."

The victim was offered medical assistance which she declined. She then returned to Denver. A few days later, the investigating officers again met with the victim at which time they produced a photo array. The victim picked appellant's picture from the array after a few moments, indicating that the man in the photo was the man who had assaulted her.

On April 29, two investigating officers contacted appellant's employer at Hawk Springs. The employer testified that appellant had not shown up for work the day following the assault and that in a telephone conversation with appellant the evening of the day appellant was not at work, appellant had inquired of the employer as to whether " * * * anybody had been kind of snooping around, looking around or

something." The employer responded in the affirmative and told appellant that two deputy sheriffs had been by asking questions about a possible rape attempt.

After receiving this information, appellant made a general denial stating: " 'Oh, that. That isn't what happened at all.' He said, 'That's nothing. There was some girl making a phone call in the phone booth,' * * * and as he passed her by, he made a sexual suggestion to her, and she ran to her car, screaming, and drove off." Appellant then indicated that his wife had been sick and that he had driven to Cheyenne immediately after making the suggestion to the victim in order to be with his wife.

A criminal complaint was filed on May 21, 1986, charging appellant with first degree sexual assault in violation of § 6–2–302(a)(i)–(ii), W.S.1977 (June 1983 Replacement). Appellant entered a plea of not guilty and not guilty by reason of mental illness or deficiency, and was ordered committed to the Wyoming State Hospital for determination of competency to stand trial. An opinion was rendered by the hospital on August 6, 1986, which concluded that appellant did " * * * not lack the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed." Trial began on January 7, 1987.

Over appellant's objection, the state introduced state's exhibit number 6 consisting of five Polaroid photographs making up the photo array the victim had looked at to identify appellant. After hearing all the evidence, the jury was instructed on the relevant statutes and elements of the crime. It returned a verdict of guilty to the charge of first degree sexual assault. On March 13, 1987, appellant was sentenced to a term of not less than twenty-five nor more than thirty-five years in the Wyoming State Penitentiary, with 300 days credit against the maximum term. This appeal followed.

I

## ADMISSION OF EVIDENCE

At trial the court admitted state's Exhibit No. 6 into evidence over the objection of defense counsel. The state asserted that the purpose of introducing this exhibit was to show a prior identification of appellant by the victim. The exhibit consisted of a photo array of five photographs shown to the victim a few days after she was assaulted. The photos were paper-clipped to a black piece of construction paper and displayed under a piece of clear plastic for trial. Each photo in the array had a piece of masking tape over the chests of the subjects.

During the trial, appellant objected to the admission of the photo array on the basis of insufficient foundation, prejudice and that it tainted the victim's in-court identification. The court overruled the objection, which was renewed at the close of the state's evidence, and overruled again. On appeal appellant contends that the photographs resembled mugshots and that their introduction was prejudicial because they unduly suggested that appellant had been involved in prior criminal activity not connected with the instant crime. Appellant asserts Rule 403, Wyoming Rules of Evidence, as the basis of his contention. Rule 403, W.R.E., provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The admission of evidence is within the sound discretion of the trial court, and absent a clear abuse of that discretion, the trial court's decision to admit the evidence will not be disturbed. *McDaniel v. State*, Wyo., 632 P.2d 534, 536 (1981); and *Daellenbach v. State*, Wyo., 562 P.2d 679, 682 (1977). The purpose of introducing the photographs in question was merely to corroborate the testimony of the victim concerning her identification of appellant as the perpetrator of the sexual assault. As

shown to the jury, the photographs were not prejudicial. They consisted of front views of five individuals; no profile shots were included. Further, no numbers were visible in the photos, and no testimony was elicited as to when the photos were taken. To the reasonable person, they are just photos presented to support the victim's in-court identification of appellant as the perpetrator of the crime. The probative value in properly identifying the individual referred to by the victim outweighed any prejudicial effect to be considered, and we find no abuse of discretion on this issue by the trial court. *McDaniel v. State*, supra, at 536.

## II

### DUE PROCESS

Appellant next contends that he was denied due process of law in violation of Art. 1, § 6 of the Wyoming Constitution and the Fourteenth Amendment to the United States Constitution, when the state failed to comply with the provisions of § 6–2–309, W.S.1977 (June 1983 Replacement), concerning the medical examination of sexual assault victims. At trial, the only references made to the existence or nonexistence of a medical examination of the victim were through the cross-examination of the victim and of an investigating deputy sheriff by defense counsel. The following colloquy took place between defense counsel and the victim:

"Q. Did the sheriff's officers in Laramie County offer to take you to the hospital or have you examined * * * ?

"A. No, they asked me if I was okay or whether I needed any medical attention."

Further, the defense counsel asked the deputy sheriff:

"Q. Was [the victim] invited, if you will, to receive medical attention if she desired?

"A. We offered medical attention. We discussed if she needed to see a doctor. At that point she stated that the friend that she had been talking to in Denver was a physician, and she would just as soon go back. We tried to get her help with the rape counseling, but for whatev-

er reasons, that wasn't successful. She was given a full gambit of options that we could come up with at that point."

No other reference was made to medical examination, nor was a specific objection made by appellant at any point during the trial or when appellant asked for dismissal of the charges. Our general rule of review of questions sought to be raised for the first time on appeal is that we will not consider such questions absent a fundamental error affecting a substantial right of the appellant or involving the jurisdiction of the court. *Baum v. State*, Wyo., 745 P.2d 877, 882 (1987); and *Duffy v. State*, Wyo., 730 P.2d 754, 758 (1986). "'* * * Furthermore, unless plain error is present, questions concerning the constitutionality of a statute are not considered on appeal if the party presenting them failed to present or argue the contention in the trial court.'" *TR v. Washakie County Department of Public Assistance and Social Services*, Wyo., 736 P.2d 712, 719–720 (1987) (quoting *Jahnke v. State*, Wyo., 692 P.2d 911, 928 (1984)).

There is no question that the denial of due process rights is directed toward a right that is fundamental and substantial. However, even though a fundamental right is involved, appellant's contentions do not raise a fundamental error or jurisdictional issue. Moreover, there is no indication of plain error. Our rule provides that "[p]lain errors or defects affecting the substantial rights may be noticed although they were not brought to the attention of the court." Rule 49(b), Wyoming Rules of Criminal Procedure. To establish plain error

"* * * [f]irst, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him. *Brown v. State*, Wyo., 736 P.2d 1110, 1115 (1987). * * *'" *In the Interest of CB*, Wyo., 749 P.2d 267, 268–269 (1988).

See also *Stone v. State*, Wyo., 745 P.2d 1344, 1349 (1987).

 In support of his contention that his due process rights were violated, appellant relies on § 6–2–309, W.S.1977 (June 1983 Replacement).[1] When interpreting a statute, we look first to the language of the statute, giving the words their plain and ordinary meaning unless otherwise indicated. *DeLozier Brothers, Inc. v. Fremont County School District, No. 14*, Wyo., 747 P.2d 515, 519 (1987). This court will not give clear and unambiguous statutory language a meaning contrary to that obviously intended by the legislature. *Wyoming Mining Association v. State*, Wyo., 748 P.2d 718, 721 (1988). Whenever possible, we read unambiguous statutory language so that each word or phrase has meaning and no part is superfluous. *Thomson v. Wyoming In-Stream Flow Committee*, Wyo., 651 P.2d 778, 787 (1982).

 Section 6–2–309(d) clearly states that a medical report is not necessary to obtain a conviction of sexual assault. As such, the failure of the state to obtain a medical report for trial does not rise to the level of a due process violation. Further, because the statute does not require a medical report for conviction, there was no violation of a "clear and unequivocal rule of law" to establish a material prejudice to appellant to invoke the plain error doctrine.

## III

### PLAIN ERROR

A similar analysis applies to appellant's third contention that the trial court committed plain error by failing to properly instruct the jury on the elements of intent, threat and compulsion, and on the affirmative defense of consent. This record does not show that appellant ever objected to the instructions before the jury began its deliberations. Rule 51, Wyoming Rules of Civil Procedure,[2] states in part:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

Since there was not an objection to the instructions, any error must be considered under the plain error doctrine. *Stone v. State*, supra, at 1353. We have, in the past, recognized our authority under the plain error doctrine to set aside an improper verdict which resulted from the issuance of defective instructions to which no objections were lodged. *Goggins v. Harwood*, Wyo., 704 P.2d 1282, 1291 (1985). In *Gore v. State*, Wyo., 627 P.2d 1384, 1388–1389

1. Section 6–2–309 provides in pertinent part:
 "(a) Promptly after receiving a report of any alleged sexual assault of the first, second, or third degree, the peace officer to whom the incident is reported shall take the victim to a licensed physician for examination, unless the victim refuses the examination. If a licensed physician is unavailable, the medical examination may be made by a person qualified to conduct the examination. One (1) witness of the same sex as the victim shall be present during the examination. The examiner shall deliver a written report disclosing the results of his examination to the peace officer or his designee.
 "(b) In lieu of the medical examination required by subsection (a) of this section, the victim of an alleged sexual assault may receive examination by a doctor of his own choosing if this examination can be obtained without delay. The doctor shall deliver a written report disclosing the results of his examination to the peace officer handling the investigation. The victim in prosecuting an act of alleged sexual assault waives any privilege due to the doctor-patient relationship with the doctor conducting the examination as to evidence bearing on the alleged sexual assault.
 "(c) The cost of the examination required by subsection (a) of this section shall be borne by the investigating agency as a cost of investigation and prosecution of the crime.
 "(d) The medical report required by this section is not necessary to obtain a conviction of sexual assault. Any written report disclosing the results of an examination made pursuant to this section shall be made available to the actor or his counsel upon demand.
 " * * *
 "(f) If a report of the alleged sexual assault is received more than ten (10) days after the alleged incident, the medical examination shall not be mandatory."

2. Rule 51, Wyoming Rules of Civil Procedure, is applicable to criminal proceedings. See *Grable v. State*, Wyo., 649 P.2d 663 (1982).

(1981), we discussed the reason for adhering to this rule:

"One important reason for invoking the plain error doctrine when reviewing jury instructions which were not objected to during the trial, is that jury instructions are written with the particular facts and theories of each case in mind. The judge, with the advice and assistance of the attorneys in the case, attempts to tailor the instructions so that they help the jury develop a clear understanding of how the facts are to be determined under the applicable law of the case. The problems the jury may have with the applicable law will differ from case to case and therefore the instructions appropriate to each case may also differ. In many cases, any one of several instructions may be legally correct. It is the duty of the attorneys in each case to determine which legally acceptable instruction best presents the client's case. Neither the judge, nor the appellate court has the appropriate perspective to make such a decision. Even if they did understand the case better than the attorney presenting it, their role prohibits them from urging one instruction over another providing both are legally sound. Thus, unless an instruction can be said to have plainly caused fundamental prejudice to the defendant's legal rights, we will not overturn it on appeal unless it was objected to during the trial and a proper instruction was offered in its place."

It is the duty of the trial court to instruct the jury on the general principles applicable to the case. *Sodergren v. State,* Wyo., 715 P.2d 170, 181 (1986). At the close of the evidence, the trial court gave the following relevant instructions:

## "INSTRUCTION NO. 2

"It is incumbent upon the prosecution to establish all the material allegations of the Information beyond a reasonable doubt. The material allegations of the Information as here used are as follows:

"That Joseph Blaz Sanchez ... on the 28th day of April, 1986, at the County of Goshen in the State of Wyoming, did inflict sexual intrusion on [the victim], causing her submission through the actual application, reasonably calculated to cause submission of said victim of physical force, and by threat of stabbing her with a knife and hitting her, said victim reasonably then believing that said Sanchez then had present ability to execute said threats.

"If these allegations are established in your minds beyond a reasonable doubt, then the prosecution has established beyond a reasonable doubt all of the material allegations of the Information.

"It is not necessary that every fact or circumstance be established beyond a reasonable doubt. All that is incumbent on the prosecution is that all the facts and circumstances taken together should establish the defendant's guilt beyond a reasonable doubt. If you are satisfied beyond a reasonable doubt from all the evidence in the case of the guilt of the defendant, then you should find him guilty."

## "INSTRUCTION NO. 6

"Pertinent portions of the Wyoming statutes provide as follows:

"(a) Any actor who inflicts * * * sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force * * *; or

"(ii) The actor causes submission of the victim by threat of death, serious bodily injury, [or] extreme physical pain * * * to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats; or

" * * *

" 'Sexual intrusion' means any intrusion, however slight, by any object or any part of a person's body * * * into the genital * * * opening of another person's body if that sexual intrusion can reasonably be construed as being for the purpose of sexual arousal, gratification or abuse.

" 'Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes * * * severe disfigurement or protracted loss or impairment of the function of any bodily member or organ."

## "INSTRUCTION NO. 7

"The necessary elements of the crime of sexual assault in the first degree as charged are:

"1. The crime occurred within the County of Goshen, State of Wyoming, on or about the date of April 28, 1986; and

"2. The defendant inflicted sexual intrusion on [the victim]; and

"3. The defendant caused submission of [the victim] through the actual application of physical force which was reasonably calculated to cause submission of [the victim] and by threat of death, serious bodily injury or extreme physical pain to be inflicted on [the victim], and [the victim] reasonably believed that the defendant had the present ability to execute these threats.

"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty of sexual assault in the first degree.

"If, on the other hand, you find from your consideration of all the evidence that each of these elements had been proved beyond a reasonable doubt, then you should find the defendant guilty of sexual assault in the first degree."

These instructions adequately apprised the jury of the necessary elements of, and relevant definitions pertaining to, the crime of first degree sexual assault. The instructions themselves are found in W.P.J.I.C. §§ 9.101, 9.102 (1978), and based on the cases cited therein. Having instructed the jury on the general principles of law applicable in this case, the trial court discharged its duty. *Sodergren v. State,* supra, at 181. No plain error exists upon which to reverse.

## IV

### SUFFICIENCY OF THE EVIDENCE

Appellant's last contention is that the evidence was insufficient to sustain his conviction. Specifically, appellant contends that the state " * * * failed to prove either a threat, express or implied, sufficient to place the victim in fear of immediate death or serious physical injury to herself, or earnest resistance on the part of the victim, sufficient to support a conviction for first-degree sexual assault." Appellant moved for a dismissal of the charges against him at the close of the state's case, and renewed the motion after the defense rested. Both motions were denied, and the jury returned a verdict of guilty to the charge of first degree sexual assault. § 6–2–302(a)(i)–(ii).

The method for reviewing the sufficiency of the evidence in criminal cases is:

" * * * [I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.

" * * *

"It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve the conflicts in the evidence. [Citations.]" *Broom v. State,* Wyo., 695 P.2d 640, 642 (1985). See also *Jozen v. State,* Wyo., 746 P.2d 1279, 1282 (1987).

Pursuant to the instructions given by the court regarding the elements of the crime charged, the state had the burden of proving beyond a reasonable doubt that (1) appellant inflicted sexual intrusion on the victim by (2) causing submission of the victim through the actual application of physical force which was reasonably calculated to cause the victim's submission *and* by (3)

threat of death, serious bodily injury or extreme physical pain to be inflicted upon the victim, and (4) the victim reasonably believed that the appellant had the present ability to execute these threats.

Appellant was charged under § 6–2–302(a)(i)–(ii). It is interesting to note that the elements contained in the instruction, as read to the jury, do not exactly mirror the elements of the offense of first degree sexual assault as contained in § 6–2–302(a), which reads:

"(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;

"(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats;

"(iii) The victim is physically helpless, and the actor knows or reasonably should know [that] the victim is physically helpless and [that] the victim has not consented; *or*

"(iv) The actor knows or reasonably should know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct." (Emphasis added.)

The difference between the instruction and the statute quoted above is that the instruction made the elements contained in subparagraphs (i) through (iv) conjunctive, rather than disjunctive, as they appear in the statute. However, appellant did not object to the instructions at trial.

■ The failure to object to instructions at trial before the jury begins its deliberations operates to preclude appellate review of those instructions, which become the law of the case unless a plain or fundamental error can be shown to prevail. *Cutbirth v. State*, Wyo., 663 P.2d 888, 891

(1983). Here, no fundamental or plain error can be shown. At the very least, the court's characterization of the elements of the offense afforded appellant greater protection, in that the state was required to prove more facts to meet its burden of proof than is usually true in a first degree sexual assault case. Even with this additional burden the state proved its case sufficiently for the jury to find appellant guilty.

Appellant's argument is that the evidence is insufficient to support his conviction because it fails to establish that he threatened the victim in such a way as to place her in fear of immediate death or serious physical injury, or that the victim earnestly resisted the assault.

"* * * In earlier cases this court recognized a principle to the effect that forcible rape can be established without proof of violence to the victim and that the victim need not always resist the assault. The gravamen of sexual assault in the first degree is lack of consent to the sexual penetration or intrusion which can be shown by resistance. [Citation.] Our cases have also recognized the proposition that lack of resistance by a victim does not necessarily demonstrate consensual intercourse. Resistance by a victim is not required when (1) resistance would be futile, (2) the victim is 'overcome by superior strength,' or (3) the victim is 'paralyzed by fear.' * * *" *Seeley v. State*, Wyo., 715 P.2d 232, 240–241 (1986).

■ At trial, the victim testified that appellant penetrated her vagina with his finger. Section 6–2–301(a)(vii)(A), W.S. 1977 (June 1983 Replacement), defines "sexual intrusion" as:

"(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue, or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse."

Taking the evidence in the light most favorable to the state, appellant's actions clearly

constitute "sexual intrusion" as defined by the statute.

 The victim also testified that when she returned to her car after making the telephone call, the man in the phone booth, appellant, appeared at her car door. Appellant then pushed his way into her car. As he did this, the victim screamed and bit appellant's hand. In retaliation, appellant bit the victim on the nose. Once inside the car, the two struggled over the car keys. When asked what he was planning to do, appellant replied, " * * * Shut up. I will stab you. Shut up or I will hit you * * *," and kept pushing on the victim. The victim testified that at that point:

> "I knew that he was stronger than I was, and it was like he had his hands in front, and there was a possibility that he had a knife somewhere. I wasn't about to question him at this time to show me the knife or to display it. *I was really scared. I was frightened for my life at this point.* He tried to drive away. He said he would stab me. I was very upset and trying to collect my thoughts, I guess, at the same time for survival. * * * " (Emphasis added.)

Appellant's actions clearly constituted physical force reasonably calculated to cause the victim's submission. Further, appellant threatened the victim with death or serious bodily injury if she did not cooperate by indicating that he would stab or hit her. Finally, based on the victim's testimony quoted above, it is clear that the victim was in fear of her life, and she reasonably believed that appellant had the present ability to execute his threats. We do not believe there was any deficiency in the evidence in this respect. The evidence proved that the victim was overcome by superior strength and that resistance on her part would have been futile. Each element of the charged crime was proven beyond a reasonable doubt in the mind of the jury such that it could find appellant guilty.

Despite this, appellant maintains that he was not the perpetrator of the crime. Appellant concedes that he made a sexual remark to the victim as she approached the telephone booth, but contends that after making the statement he left the area. Clear evidence to the contrary was before the jury. The victim gave a written description of appellant to the investigating officers the evening she was assaulted. She later picked appellant's picture out of a photo array and made an in-court identification of appellant, testifying that her memory of the perpetrator's face was very strong in her mind. The evidence at trial was sufficient to support appellant's conviction.

Affirmed.