**Michael H. GREEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 89–47.

Supreme Court of Wyoming.

Dec. 26, 1989.

---

Steven E. Weerts, Sr. Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Gay Woodhouse, Sr. Asst. Atty. Gen., and Karen Byrne, Sr. Asst. Atty. Gen., argued, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant Michael H. Green appeals his conviction for aggravated robbery, W.S. 6–2–401(c)(ii), and the imposed sentence which was enhanced by the habitual criminal statute, W.S. 6–10–201.

Green raises the following issues:

"I. Whether the trial court erred by failing to enforce appellant's rights under the Interstate Agreement on Detainers.

"II. Whether appellant's constitutional right of silence was violated by a law enforcement officer's impermissible comments during trial.

"III. Whether the trial court erred by failing to dismiss the habitual criminal allegation."

The State frames these issues as follows:

"I. Whether or not appellant's motion to dismiss based upon rights in the Interstate Agreement on Detainers Act was properly denied.

"II. Whether or not appellant's constitutional right to silence was violated by a witness' testimony that the appellant refused to speak to the first two officers but did speak to the witness.

"III. Whether or not the trial court erred in denying appellant's motion to dismiss the habitual criminal charge."

We affirm the conviction on the aggravated robbery charge but reverse and remand for resentencing under the habitual criminal sentencing statute.

## FACTS

In the late evening of August 11, 1987, a man armed with a knife grabbed the clerk of a convenience store in Laramie, Wyoming and demanded money. The assailant took about $300.00 in cash and 13 blank money orders. The clerk identified Green as his assailant. Prior to this robbery, the clerk had noticed a person sitting in a car behind the store wearing clothing similar to that worn by the assailant. Near where this car had been parked, the Laramie police found a discarded cigarette package which contained Green's fingerprints. On August 14, 1987, Green was arrested in Butte, Montana. A car in which Green was riding contained the stolen money orders.

The episode in Laramie was not the only event during this short period of time that resulted in criminal charges against Green. Green was charged with three counts of aggravated assault, aggravated robbery, aggravated kidnapping and aggravated criminal sodomy for crimes he committed on August 11, 1987, in Saline County, Kansas. He was convicted on these charges on February 26, 1988, and was sentenced to prison for two consecutive prison terms of 15 years to life, one consecutive life sentence, and three concurrent sentences of three to ten years. Green was also found guilty of aggravated robbery for the August 12, 1987, robbery of a Rawlins, Wyoming convenience store, for which he received a sentence of 20 to 25 years in prison. See *Green v. State*, 776 P.2d 754 (Wyo.1989).

Pursuant to the Interstate Agreement on Detainers, W.S. 7–15–101, 18 U.S.C.Appx.

(1982), Green was brought to Wyoming from Kansas to stand trial on the charges arising from the Rawlins and Laramie robberies. A jury convicted Green for the Rawlins robbery on November 9, 1988. On January 24, 1989, a jury convicted Green for the Laramie robbery and in that same proceeding also found him to be habitual criminal. Because the jury found Green to have been previously convicted of four felonies, the court sentenced Green to life in prison.

## DISCUSSION

### 1. *Interstate Agreement on Detainers*

Wyoming's version of the Interstate Agreement on Detainers is contained in W.S. 7–15–101 through –105. W.S. 7–15–101 states in pertinent part:

### Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial *at the next term of court* after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (emphasis added)

The federal act, 18 U.S.C.Appx., requires a state participating in the Interstate Agreement on Detainers to adopt its statutes "in substantially" the same form as the federal act. Id. at § 2. Wyoming's version of the Interstate Agreement on Detainers, cited above, is the same as the

federal act except that the federal government's version requires the time for trial to be "within one hundred and eighty days" instead of "at the next term of court" required by the Wyoming statute, W.S. 7–15–101.

■ Green contends that this difference in wording is unconstitutional. The Interstate Agreement on Detainers, however, is merely a statutory set of procedural rules that do not rise to the level of constitutionally guaranteed rights. *Camp v. United States*, 587 F.2d 397, 400 (8th Cir.1978); *Perry v. Carter*, 514 F.Supp 19, 21 (W.D.Okla.1980). The right that Green apparently here argues as being violated due to the language difference may be his right to a speedy trial. Although we have a well-settled analysis to determine whether a defendant received a speedy trial, *Harvey v. State*, 774 P.2d 87 (Wyo.1989), we need not apply that analysis here. If another appropriate ground exits to resolve an issue, we need not discuss constitutional questions. *K N Energy, Inc. v. City of Casper*, 755 P.2d 207 (Wyo.1988). We need not discuss the speedy trial question in this case because, when only the days countable are computed, Green was brought to trial within 180 days.

The Albany county attorney's office received notice of Green's desire to face trial on this charge on May 31, 1988. Green's trial was conducted on January 23, 1989, a span of 236 days after his request. However, from June 29, 1988, until November 9, 1988, he was unavailable for trial in this case in Albany County because he was preparing for and standing trial on the Carbon County charge. The time he was detained for trial in Carbon County tolls the time used to determine the number of days between his request and trial. *Commonwealth v. Petrozziello*, 22 Mass.App. 71, 491 N.E.2d 627, 633, *cert. denied* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Subtracting the 133 days during which he was held in Carbon County from the total 236 days leaves only 103 days, well within the 180–day limit that the federal act and other jurisdictions impose on interstate detainers. The trial court, thus,

properly denied Green's motion to dismiss based on any delay in bringing him to trial.

2. *Green's Constitutional Right of Silence*

■ Green contends that his right to silence, based on the Fifth Amendment of the United States Constitution and Art. 1, § 11 of the Wyoming Constitution, was violated during trial. The following examination by the Deputy Albany County Attorney of Lt. Donald Butler of the Butte/Silver Bow, Montana Law Enforcement Agency sparks this contention:

"Q. Do you remember when it was that you came in contact with the Defendant?

"A. On the early morning hours of August 14, 1987.

"Q. In the contact you had with the Defendant, did you ever have a conversation with him?

"A. Yes, I did.

"Q. What was that conversation about?

"A. He was involved in an incident in our city, and two of the officers on my crew had him in custody, and he refused to identify himself in any way or any manner, so as shift commander, they had contacted me and I went up to talk to the subject.

"Q. Did you talk to the Defendant?

"A. Yes, I did.

"Q. What did you say to the Defendant, do you recall?

"A. Well first, I reviewed his Miranda rights, his constitutional rights with him, and then due to the situation he was involved in in Butte, I explained to him that he was not helping himself at all by trying to remain anonymous, or not giving his name or anything like that, and that we would eventually find out who he was. We would positively identify him. It would just be a matter of time for us, and extra inconvenience for him, but we would eventually know who he was, and I explained that he was doing himself no good by remaining silent as far as identity goes.

"Q. Did the Defendant ever give you his name?

"A. Yes, he did. * * * He had refused to talk to Sergeant Henrich and Officer Bury, but with me he opened right up—"

At this point Green's attorney moved for a mistrial.

Not every reference to a defendant's failure to respond to a question put forth by law enforcement authorities will result in reversal of a conviction. *Gomez v. State*, 718 P.2d 53, 55 (Wyo.1986); *Parkhurst v. State*, 628 P.2d 1369, 1381 (Wyo. 1981), *cert. denied* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). The instant case does not present a situation where the prosecutor has made an impermissible comment on Green's right to remain silent which must result in reversal. *Westmark v. State*, 693 P.2d 220 (Wyo.1984). Rather, at issue here is the answer of the witness to an innocuous question about Green identifying himself. Green was advised of his Miranda rights, which include the right to remain silent during interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). The gathering of booking information such as a suspect's name does not, however, reach the level of interrogation that the process enunciated in *Miranda* was intended to cover. *United States v. Disla*, 805 F.2d 1340 (9th Cir.1986); *United States v. Gotchis*, 803 F.2d 74 (2nd Cir. 1986). *See also Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Where silence carries no penalty, there is no error. *Parkhurst*, 628 P.2d at 1382. Butler's testimony "does not rise to the level of prohibited comments on silence." *Id.*

Finally, it is clear that Butler's answer did not create "an inference of guilt." Rather the record contains overwhelming evidence of guilt that resulted in his conviction. Not only did the store clerk identify Green as the assailant, but a cigarette package found at the scene had Green's fingerprints on it, and the car in which Green admitted riding contained the stolen money orders. We find it clear that there was not any error committed in asking appellant his identity.

## 3. *The Habitual Criminal Sentence*

Following a jury finding of guilt on the aggravated robbery charge, the trial court proceeded to determine whether Green was subject to sentencing under the habitual criminal statute, W.S. 6–10–201, which states:

"(a) A person is an habitual criminal if:

"(i) He is convicted of a violent felony; and

"(ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

"(b) An habitual criminal shall be punished by imprisonment for:

"(i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;

"(ii) Life, if he has three (3) or more previous convictions."

The instructions given the jury included the following:

### Instruction No. 4

"The term 'separately brought' means that the charges must have been brought separately from this aggravated robbery charge of which the defendant has just been found guilty."

### Instruction No. 5

"The term 'previous charges' means charges that were brought and tried before today's verdict."

### Instruction No. 6

"The term 'separate occurrences' means occurrences which are separate from the aggravated robbery charge of which the defendant has just been found guilty."

The jury found Green to have been convicted of four previous felonies based on evidence concerning three of Green's Kansas convictions and his Carbon County conviction.

Green takes issue with instructions four and six because they allowed the jury to consider the three Kansas convictions indi-

vidually. We agree that these instructions were in error. Green takes issue with instruction five because it allowed the jury to consider the Carbon County conviction despite the fact that the crime from which the charge arose was committed after the Albany County crime. This instruction was proper.

In order to determine whether these instructions were proper, we must determine the meaning of the words "separately brought," "previous charges," and "separate occurrences" as used in W.S. 6–10–201(a)(ii). When called upon to interpret a statute, we give words their ordinary and plain meaning unless otherwise indicated. *Sanchez v. State,* 751 P.2d 1300, 1305 (Wyo.1988).

The ordinary and plain meaning of the terms "separately brought" and "separate occurrences" required for sentence enhancement refers to more than just the conviction. These terms refer as well to charges and occurrences separate from each other. Nothing in the statute indicates any other meaning is to attach to these terms. This interpretation is in harmony with the constitutional mandate that the penal code is to be humane. Wyoming Constitution, Art. 1, § 15. Further, we find this to be the better reading and the one followed in a majority of jurisdictions. See, e.g., Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty for Subsequent Offense under Habitual Criminal Statutes,* 24 A.L.R.2d 1247 § 6 (1952); *Rezin v. State,* 95 Nev. 461, 596 P.2d 226 (1979); *State v. Robinson,* 388 N.W.2d 43 (Minn.App.1986). The Kansas convictions arose out of one occurrence, the August 11, 1987 convenience store robbery, and were brought in one trial. They were not "separately brought and tried" nor did they arise out of "separate occurrences" as required by the habitual criminal statute, W.S. 6–10–201. The Kansas convictions can, therefore, only count as one previous conviction under the habitual criminal statute.

■ The trial court did instruct the jury properly on the meaning of "previous charges." This is clear when we consider the entire section of the statute from where these words come. *Story v. State,* 755 P.2d 228 (Wyo.1988). W.S. 6–10–201 permits an enhanced sentence if a person "has been convicted of a felony on two (2) or more previous charges." The statute does not require that a crime be previously committed, only that there be previous convictions. *State v. Dixon,* 126 Ariz. 613, 617 P.2d 779, 784 (1980). Thus, the Carbon County conviction may count toward a habitual criminal statute sentence enhancement. The Carbon County conviction occurred previous to the Albany County conviction; it matters not that Green committed the Carbon County robbery following the Albany County one.

We remand for resentencing because the jury was erroneously allowed, under the instructions which were given, to count each Kansas conviction separately, thereby resulting in four prior convictions and Green's receipt of a life sentence under W.S. 6–10–201(b)(ii). The record contains evidence of only two prior convictions that can count toward enhancing the aggravated robbery penalty.

The conviction is affirmed and the sentence reversed and remanded for proceedings consistent with this opinion.