**William Dean KEENE, a/k/a Paul Keene, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–92.**

Supreme Court of Wyoming.

June 7, 1991.

Richard C. Slater, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Paul Rehurek and Karen A. Byrne, Sr. Asst. Attys. Gen., Thomas L. Lee, Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

William Dean Keene appeals from his conviction on two counts of kidnapping and one count of aggravated robbery, and the enhancement of his sentence on the finding that he is a habitual criminal under W.S. 6–10–201 (June 1988 Repl.). We affirm the aggravated robbery conviction and the application of the habitual offender statute to Keene, but vacate the kidnapping convictions.

Keene presents four arguments and the state responds to each in turn. We use the state's restatement of the issues for the sake of brevity:

I. Was Appellant properly tried and convicted of kidnapping under W.S. 6–2–201 on the basis of removing the victims from their vicinity?

II. Do Appellant's two prior felonies satisfy the requirement of W.S. 6–10–201 that the prior offenses be separately brought and tried?

III. Was Appellant denied due process of law and a fair and impartial trial due to ineffective assistance of trial counsel?

IV. Were the identification procedures employed by the state unnecessarily suggestive and was Appellant denied a fair trial due to cumulative error?

### FACTS

At approximately 1:30 p.m. on September 28, 1988, a lone gunman robbed Gibson's Pharmacy in Cheyenne, Wyoming. The robber, armed with what appeared to pharmacy employees to be an automatic handgun, went to the pharmacy counter in the back of the store and ordered the pharmacist, store owner Ken Urquhart, to fill a plastic bag with "C2s," narcotic drugs including amphetamines and barbiturates. Urquhart thought the man was joking until he cocked the gun and said, "I mean it." The robber then noticed two women, Misty Tucker and Lana Hendricks, working in a back office off the side of the pharmacy area. Pointing the gun, he ordered them out of the office and into the area behind the pharmacy counter with Urquhart. He prodded Hendricks in the back with the gun to hurry the women along. The robber filled a wastebasket liner with the drugs after Urquhart unlocked the drug cabinet.

The robber then walked to the front of the store. There he demanded money from the cashier, Sharon Urquhart. After seeing the gun and realizing that he was serious, she opened the register and told him to get the money himself. The robber took some of the cash from the drawer and left through the front entrance, heading south on foot.

As soon as the robber left the building, Misty Tucker called 911. The four pharmacy employees were separated by the first officer to arrive at the scene, and each was interviewed individually by the investigating detective. Misty Tucker had instantly identified the robber as a man who had been in the store two days earlier and had asked her then about performing a remodeling job Urquhart had been considering. Urquhart had talked to the man sometime earlier about the possible remodeling project, and a search of notes on a clipboard turned up the name "Paul King" and an address on a note Urquhart had made after that meeting.

The investigating detective showed the four witnesses a total of five photo line ups over a two and one-half month period following the robbery, each based on a different suspect developed by the investigation. The witnesses rejected the first four photo line-ups, but picked out Keene in the fifth one, which was shown to them on December 9, 1988. Misty Tucker and Ken Urquhart recognized photo # 5 (Keene) as the robber. Lana Hendricks and Sharon Urquhart identified either photo # 1 (because of the hair) or # 5 (Keene) as the robber, and Hendricks believed she could identify the robber in person.

Before the robbery, Keene had been living in Cheyenne after escaping from a Colorado honor farm, where he was serving consecutive sentences for robbery and violation of bail bond. He was using the name of his brother Paul, who had been killed several months earlier in a traffic accident. At the time of the robbery Keene was employed at Wyoming Handicapped Workers. At about noon on September 28, 1988, a co-worker dropped him off at his apartment near the pharmacy for the afternoon lunch break. Keene moved from his apartment after the robbery. He later called his former landlady to ask whether the police had questioned her. He called the police on October 1, 1988, to ask why they were looking for him, but would not come to the station to talk about the case or provide police with a photo. He was arrested in Oklahoma on August 27, 1989.

Keene was initially charged with one count of aggravated robbery in violation of W.S. 6–2–401(c)(ii) (June 1988 Repl.) and two counts of kidnapping in violation of W.S. 6–2–201(a)(ii) (June 1988 Repl.) An amended information retained these charges and also charged Keene with being a habitual criminal under W.S. 6–10–201, based on the two previous felony convictions in Colorado. He was tried by jury December 11 and 12, 1989, and found guilty on all charges; judgment and sentencing was March 2, 1990. This appeal followed.

## KIDNAPPING

That portion of W.S. 6–2–201 germane to the issue raised by Keene reads:

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:

(ii) Facilitate commission of a felony.

Keene was convicted on two charges of kidnapping, based on his having moved the two women at gunpoint from the back office into the adjacent pharmacy area while committing the robbery. The state argued that this movement constituted removal "from the vicinity where [they were] at the time of the removal." Keene now argues that this language only applies when the victim is not initially located in the victim's residence or business because the plain and ordinary meaning of the terms "residence," "business" and "vicinity" makes them separate and distinct. He also contends that applying the "removal from the vicinity" language to facts such as these renders the "removal from a business" language inop-

erative, a result that is contrary to our rules of statutory construction. Our review of W.S. 6–2–201 persuades us that Keene is correct.

■ To construe the kidnapping statute we look first to its language. Words are to be given their plain and ordinary meaning unless otherwise indicated. *Green v. State,* 784 P.2d 1360, 1365 (Wyo. 1989). "Every word in a statute must be given meaning." *Matter of Patch,* 798 P.2d 839, 841 (Wyo.1990).

■ The word central to our analysis is "or." W.S. 6–2–201 separates a removal from a business from a removal from the vicinity (and removal from a residence) by use of the disjunctive "or."

Webster's defines "or" as a function word to indicate (1) an alternative between different or unlike things, states or actions; (2) choice between alternative things, states or courses. The word "or" is ordinarily used as a disjunctive generally corresponding to "either" as "either this or that." Where two clauses or phrases are expressed in the disjunctive, they are coordinate and either is applicable to any situation to which its terms relate. Generally, use of the disjunctive indicates alternatives and requires separate treatment of those alternatives, hence *a clause following a disjunction is considered inapplicable to the subject matter of the preceding clause.*

*Matter of Adoption of Voss,* 550 P.2d 481, 485 (Wyo.1976) (citations omitted) (emphasis added). *See also Basin Electric Power Cooperative v. State Board of Control,* 578 P.2d 557, 566 (Wyo.1978). In a nutshell, the use of "or" confirms the statutory alternatives are separate and distinct. Consequently, as used in W.S. 6–2–201, removal from the vicinity cannot refer to locational changes *within* a victim's residence or a business.

■ This result is reinforced by the consideration that we must read statutes so that no word or phrase is superfluous or inoperative. *State of Wyoming ex rel. Worker's Compensation v. Mahoney,* 798 P.2d 836, 838 (Wyo.1990); and *Sanchez v. State,* 751 P.2d 1300, 1305 (Wyo.1988). We can do this only if the alternatives in W.S. 6–2–201 are treated as exclusive. If vicinity is permitted to encompass areas within victims' residences or businesses, those terms would become superfluous, i.e., statutory excess baggage. We must presume the legislature assigned separate and distinct meanings to these terms, as the legislature cannot be presumed to intend futile things. *Thomson v. Wyoming In–Stream Flow Committee,* 651 P.2d 778, 787 (Wyo. 1982).

Although, as is commonly the case in Wyoming, we are not blessed with the history of the development and passage of this statute, W.S. 6–2–201 is almost identical to the Model Penal Code kidnapping provision, and we have turned to the Model Penal Code commentaries in the past to consider the purpose of this particular statute and others we have been required to interpret. *Loomer v. State,* 768 P.2d 1042, 1046 (Wyo.1989). *See also Ketcham v. State,* 618 P.2d 1356, 1365 (Wyo.1980) (Rose, J., dissenting).

In the commentary to the section on kidnapping, the Model Penal Code states,

[a] potential danger which a rational penal code must avoid is that the definition of kidnapping will sweep within its scope conduct that is decidedly wrongful but that should be punished as some other crime. Thus, for example the robber who forces his victim from one room to another in order to find a cashbox or safe technically may commit kidnapping as well as robbery. This reasoning raises the possibility of cumulative penalties or higher sanctions for kidnapping even though the "removal" of the victim to another place was part and parcel of the robbery and not an independent wrong.

Model Penal Code, § 212.1 comment 2, pp. 220–21 (1980).

The commentary explains the purpose of the wording "place of residence or business or from the vicinity where he was at the time of removal":

This phrasing of the asportation requirement eliminates the absurdity of liability for kidnapping where a robber forces his

victim into his own home or into the back of a store in order to retrieve valuables located there. For situations in which the victim *is seized elsewhere than in his residence or place of business* the section requires removal "a substantial distance from where he is found."

Model Penal Code, *supra*, at 223. (emphasis added). While our legislature removed the term "substantial distance," it did nothing else to alter the asportation requirement. Although not conclusive, the Model Code's statement of the purpose for the phrasing of the statute is persuasive.

To summarize, removal from the vicinity does not apply to these facts, as Tucker and Hendricks were encountered within the business. No kidnapping occurred because Tucker and Hendricks were not removed from the business. The movement of Tucker and Hendricks from the office to the pharmacy area must be regarded as incidental to the conduct of the robbery. We conclude the plain language of the kidnapping statute mandates reversal of Keene's convictions of kidnapping.

## HABITUAL OFFENDER STATUS

A habitual criminal is defined in this way:

(a) a person is a habitual criminal if:

(i) He is convicted of a violent felony; and

(ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

W.S. 6–10–201.

Keene challenges the district court's determination, based on his prior felony convictions in Colorado for robbery and a bail bond violation, that he is a habitual offender. He does not dispute that his conviction of aggravated robbery satisfies the violent felony requirement of the definition, *See Oakley v. State*, 715 P.2d 1374, 1380 (Wyo.1986), but argues that the convictions may not be treated as "separately brought and tried" under W.S. 6–10–201 because he entered pleas to the two Colora-

do felony charges on the same day and was sentenced at the same time.

Keene attempts to avoid the contrary precedent of *Connor v. State*, 537 P.2d 715 (Wyo.1975) by labelling it outdated. He seeks support for his claim in the *Green* case, which considered the meaning of the terms "separately brought" and "separate occurrences." Neither contention has merit.

In *Connor* this court considered an earlier version of the Wyoming habitual offender statute. Connor argued that prior convictions resulting from guilty pleas entered on the same day could not be considered "separately tried" and so should not be treated as two distinct convictions under the statute, even though the pleas resulted from two entirely separate crimes that occurred at different times. This court rejected the argument, holding it was a novel contention not supported by authority. *Connor*, 537 P.2d at 719. Keene does not offer any authority on point to discredit the *Connor* result, and we affirm the *Connor* rule in Wyoming.

Also, we find no support for Keene's reliance on *Green*. In *Green*, the appellant, for purposes of habitual offender status, challenged two jury instructions which allowed the jury to consider three convictions which arose out of one occurrence and which were obtained in one trial. *Green*, 784 P.2d at 1365. This court held that the three convictions only counted as one previous felony conviction under the habitual criminal statute. The jury instructions were erroneous because the three convictions were not "separately brought and tried" nor did they arise out of "separate occurrences" as required by the statute. W.S. 6–10–201.

Keene suggests that his situation is parallel to that of Green. It is not. Keene's two prior convictions resulted from separate incidents, and charges on each were separately brought. His claim that the bail bond violation is somehow part of the earlier robbery is without merit. It was a spatially and temporally separate transaction, and the charge was brought in a separate information. Finally, that he entered

guilty pleas to both on the same day is of no moment as was stated in *Connor*. The district court properly applied W.S. 6–10–201 when sentencing Keene upon his conviction for aggravated robbery.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Keene's ineffective assistance of counsel argument is predicated on his trial counsel's failure to object to the jury instructions on kidnapping on the ground that Keene's actions did not constitute the activity criminalized by the statute. Keene claims this was a serious error that prejudiced his defense by permitting his trial and conviction of a crime, the elements of which his conduct did not satisfy. For the well-known standard of ineffective assistance of counsel, *see inter alia, Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); and *Frias v. State*, 722 P.2d 135, 145 (Wyo. 1986). Because we hold that Keene's conduct was not kidnapping and reverse on that issue, it is not necessary to consider the question of his counsel's effectiveness.

## LINE–UPS AND CUMULATIVE ERROR

Keene's final argument is somewhat confusing and actually appears to be two distinct arguments folded into one. As this court understands it, he argues that error resulted from use of suggestive identification procedures and that this and several other alleged errors cumulated to an unacceptable level, requiring reversal. The other alleged errors include the failure of his trial counsel to challenge the instructions on kidnapping, failure to present exculpatory fingerprint evidence, failure to introduce evidence that the guns taken from Keene when he was arrested in Oklahoma did not match the description of the gun used in the robbery, failure to introduce evidence that he was not a known drug user, and failure to submit evidence of a polygraph examination he underwent after trial.

■ This court is puzzled by Keene's argument that identification procedures used in his case were erroneous. His claim that the photo line-up from which he was identified was somehow suggestive fails to acknowledge that all four witnesses had rejected four prior photo line-ups comprised of photographs of earlier suspects. We find no merit in Keene's contention that his photo was singled out by the witnesses in the fifth photo line-up on the basis of ethnic or age characteristics. And, as the witnesses had already identified Keene in the photo line-up, it is not clear what harm occurred when two of them observed Keene at his preliminary hearing. Keene also complains that he was not placed in a physical line-up before or during trial, but fails to explain or justify this claim of error. Finally, that all of the witnesses were positive in their identifications at trial does not, without more, suggest any impropriety. We note that defense counsel vigorously exercised his opportunity to cross-examine the witnesses on the nature and strength of their identifications. This court has made clear that we will not consider an issue that is not supported by cogent argument or authority. *Bland v. State*, 803 P.2d 856, 862 (Wyo.1990). Appellant failed to provide cogent argument or authority in this instance.

Regarding Keene's claim of cumulative error, it appears that, beyond his suggestive identification claim, he is simply rehashing or embellishing his ineffectiveness of counsel argument. We are not persuaded that anything Keene points to is error. "A claim of cumulative error depends upon error being recognized * * *." *Justice v. State*, 775 P.2d 1002, 1011 (Wyo. 1989).

Keene's conviction for aggravated robbery and the enhancement of his sentence under the habitual criminal statute are affirmed. His convictions for kidnapping are vacated.