**Michael H. GREEN, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 88–327.

Supreme Court of Wyoming.

July 5, 1989.

Mike Cornia, Appellate Counsel, Public Defender Program, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Paul S. Rehurek, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Michael H. Green appeals from his conviction and sentence for aggravated robbery, raising the following three issues:

"Whether the Appellant's right to due process was violated by the admission of evidence concerning pre-trial identification and subsequent identification at trial."

"Whether the sentence imposed on the Appellant is illegal in that it was based on information which was not disclosed to the Appellant."

"Whether the Appellant should be given credit for time served in presentence incarceration since he was indigent and received the maximum allowable sentence."

We affirm.

At 3:20 a.m. on August 12, 1987, a large male caucasian entered a Mini–Mart in Rawlins, Wyoming. He approached the cashier, Willinor Newbrough, threatened her with a knife, and demanded all the money from the store's two cash registers. After emptying both registers, he briefly searched the office area and ordered Ms. Newbrough into the restroom. He then left the store. When Ms. Newbrough heard the door buzzer sound, she left the restroom and telephoned the police.

Approximately five minutes after her call, Officer Hill of the Rawlins Police Department arrived at the store. Detective Lancto arrived nearly an hour later. Ms. Newbrough described her assailant to the officers as being 25 to 30 years old, about six feet tall, 250 to 260 pounds, very heavy in the stomach, bearded, with sandy-colored shoulder length hair, and wearing a dirty white T-shirt, jeans and tennis shoes. Within a few days, Detective Lancto received word that law enforcement officials in Butte, Montana, were holding an individual matching that description for a similar offense. He obtained a booking photograph of the individual, Michael Green, from the authorities in Butte and included that picture in a photographic lineup which he presented to Ms. Newbrough on August 18, 1987. From the six-man lineup, she identified the appellant as the robber.

Sometime in late June 1988, appellant was delivered to Wyoming from incarceration in the Kansas State Penitentiary, pursuant to the Interstate Agreement on Detainers, W.S. 7–15–101 (June 1987 Repl.). He was tried on a single count of aggravated robbery in violation of W.S. 6–2–401(c)(ii), found guilty of that offense, and sentenced to a term of twenty to twenty-five years in the Wyoming State Penitentiary, to be served consecutively to any sentences then being served in other states.

I

Appellant asserts that the photographic array presented to Willinor Newbrough

was defective because, of the six men represented, only appellant's photo closely conformed to the description she had previously given of her assailant. Such being the case, appellant contends, the lineup was impermissibly suggestive and conducive to misidentification, thereby violating his right to due process. He further contends that such a defective pretrial identification would irreparably taint Ms. Newbrough's subsequent identification of appellant at trial and concludes that those defects demanded that evidence of both identifications be excluded. We disagree.

■ The standard for evaluating such due process challenges to pretrial lineup and showup procedures has often been articulated, both by this court and the United States Supreme Court. The admission of evidence derived from pretrial identifications violates due process protections only if, under the totality of circumstances, the particular procedures employed were so unnecessarily suggestive as to create a very substantial likelihood of an irreparable misidentification. The principal motive for excluding such evidence is to keep eyewitness identifications from the jury where circumstances strongly suggest that the State caused the witness to make a mistake. Thus, the reliability of the identification is the key to determining admissibility, and even an unnecessarily suggestive pretrial identification may be admissible if the surrounding facts indicate that it was otherwise reliable. *Manson v. Brathwaite*, 432 U.S. 98, 106–07, 112–14, 97 S.Ct. 2243, 2249, 2252–53, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 196–98, 93 S.Ct. 375, 380–82, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 382–85, 88 S.Ct. 967, 970–72, 19 L.Ed.2d 1247 (1968); *Alberts v. State*, 642 P.2d 447, 450 (Wyo. 1982); *Sears v. State*, 632 P.2d 946, 948 (Wyo.1981); *Reinholt v. State*, 601 P.2d 1311, 1313 (Wyo.1979); *Campbell v. State*, 589 P.2d 358, 362–64 (Wyo.1979).

■ In determining whether the identification was sufficiently reliable, we weigh a number of factors against the corrupting influence of the identification procedure. We consider whether time and environmental conditions gave the witness an ample opportunity to view the perpetrator of the crime at the scene. We also examine the degree of the witness' attention to the perpetrator at that time, giving due regard to whether the witness was casually or intimately involved in the criminal event, and whether the witness had any special training or experience in making observations or identifications. Next, we analyze the accuracy of any description the witness may have given prior to identifying a suspect, in terms of the time lapse between the event and the description, the extent of the characteristics described, and the extent to which those characteristics peculiarly identify the suspect. Finally, we consider the certainty with which the witness identified the suspect and the time that elapsed between the criminal encounter and the later identification. See *Manson*, 432 U.S. at 114–16, 97 S.Ct. at 2253–54; *Sears*, 632 P.2d at 948–50; *Reinholt*, 601 P.2d at 1313–14.

Applying this analysis to the present case, we find that Ms. Newbrough's identification of appellant should permit the admission of both her in-court identification and her selection of appellant from the photo array. Even if the lineup had been impermissibly suggestive, a determination we need not make, such evidence was sufficiently reliable to satisfy the demands of due process. Appellant was close to the witness in a well-lit store for a period of three to five minutes. Ms. Newbrough was not merely a casual observer, but a victim, and the nature of appellant's threatening conduct was such as to force her full attention. Furthermore, her employer had trained her to make detailed observations so that she might provide the police with adequate descriptions of robbers. Her detailed description of the assailant, just minutes after the robbery, closely matched appellant's physical characteristics. Accordingly, when she viewed the six-man photographic lineup just six days later, she immediately and with great emotion and certainty identified appellant as that assailant. She displayed the same certainty at trial. There was no error in admitting her identification of appellant into evidence.

## II

The trial court, at the outset of the sentencing hearing, indicated that it would rely on the report of a presentence investigation conducted in conjunction with appellant's recent conviction in Kansas. When initially asked if he wished to amend or correct that report, appellant stated that he had received a copy of the report but had not had an opportunity to read it in its entirety. The trial court then requested that the prosecutor offer a sentencing recommendation, and invited appellant's rebuttal. Appellant now asserts that the information contained in the presentence report was not disclosed to him in a manner which would permit him to contest that information. Thus, he contends, we must remand his case for resentencing.

■ Appellant correctly notes that the sentencing court was required to disclose to him the contents of any presentence report and provide him with an opportunity to comment upon those contents. *Griebel v. State*, 763 P.2d 475, 477–78 (Wyo.1988). However, "filed reports and information are evidence for the exercise of sentencing discretion, subject only to rights of the convicted individual to deny, dispute or disprove." *Christy v. State*, 731 P.2d 1204, 1207–08 (Wyo.1987). Furthermore, where such information has been disclosed and the appellant given an opportunity to make a record that the information is either false or that it furnishes an improper ground for sentencing, the imposed sentence must stand unless appellant can show that he was prejudiced by the sentencing court's reliance on false or improper premises. *Smallwood v. State*, 771 P.2d 798, 801–02 (Wyo.1989).

■ Appellant was not deprived of an opportunity to review and comment upon information that the trial court deemed significant to its sentencing decision. As noted above, the presentence investigation report used here was identical to the thirty-three page report relied upon during his earlier conviction and sentencing by a Kansas district court. Appellant admitted his familiarity with at least a portion of that report. In addition, both the prosecutor and the trial court explained and summarized, on the record, facts from the report which they considered crucial to the subsequent sentencing, including appellant's criminal history and a psychological evaluation. We find nothing in the record to indicate that appellant, after hearing these remarks, requested additional time to review the presentence report. Nor do we find any effort to dispute the facts set out by the prosecutor and the court. Appellant's only rebuttal in this regard was a reassertion of his innocence with respect to both the Kansas and Wyoming offenses. Even now, upon appellate review, appellant has failed to identify any false or improper ground upon which the trial court may have relied in imposing his sentence. More importantly, he does not allege that the trial court based its sentencing decision on *any* fact other than those set forth at his sentence hearing. We therefore hold that the information upon which the court relied was properly disclosed to appellant and that he was properly afforded an opportunity to rebut that information.

## III

■ Appellant also argues that, because he was indigent and received the maximum allowable sentence for the charged offense, he is entitled to credit against that sentence for time served while in the custody of the Carbon County Sheriff's Department. In support of that argument he cites our recent decision in *Lightly v. State*, 739 P.2d 1232 (Wyo.1987), in which we noted that a trial court's discretion to deny such credit was limited by equal protection concerns where a defendant is indigent and by jurisdictional concerns where the term of his sentence, combined with the term of any presentence incarceration, exceeded the maximum statutory penalty. *Id.* at 1234 n. 1. Appellant's reliance on Lightly is misplaced.

Our controlling decision, under the facts of this case, is *Duffy v. State*, 730 P.2d 754 (Wyo.1986). In Duffy, as in the present case, a defendant was delivered to custody in Wyoming from imprisonment in a foreign jurisdiction, pursuant to the Interstate

**758**

Agreement on Detainers, W.S. 7–15–101 (June 1987 Repl.). We held that the defendant was not entitled to credit for the time he served in Wyoming awaiting trial because, according to the provisions of the Interstate Agreement, during that time he was deemed to be in the custody of Colorado and serving the sentence imposed in that state. Accordingly, he was ineligible for release on bond. *Id.* at 757. Our interpretation of the Interstate Agreement on Detainers is consistent in this regard with the decisions of a number of other courts that have considered this issue. See *Houston v. Commonwealth*, 641 S.W.2d 42, 44–45 (Ky.Ct.App.1982); *Mills v. State*, 626 S.W.2d 583, 584 (Tex.Ct.App.1981); *Hagerman v. Henderson*, 79 A.D.2d 1112, 435 N.Y.S.2d 864, 865 (1981).

Appellant's circumstances are identical to those in Duffy. His presentencing incarceration in Wyoming was not a consequence of his indigence because he was technically in the custody of the State of Kansas and, hence, ineligible for release on bail. Therefore, credit for time served need not be granted on equal protection grounds. Because that period of incarceration was imposed under the jurisdiction of a Kansas district court and credited against the sentence of that court, Wyoming's exercise of jurisdiction over appellant affected only the place, not the extent, of that incarceration. Therefore, that period of custody is not attributable to the jurisdiction of the trial court and need not be credited against the jurisdictional limits on that court's sentencing authority. There was no error in the trial court's failure to credit appellant's sentence with presentence time served.

The judgment and sentence of the trial court is in all respects therefore affirmed.