**Danny Lee SCOTT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 92–172.**

Supreme Court of Wyoming.

July 15, 1993.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender,

Mike Cornia, Deputy Public Defender, Cheyenne, and Defender Aid Program, Gerald M. Gallivan and Thomas R. Raynes, Student Intern, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Cheyenne, and Prosecution Assistance Program, Theodore E. Lauer, Director, and Carol Watson, Student Intern, Laramie, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Appellant Danny Lee Scott was convicted in July of 1992 of burglary and aggravated assault and battery in violation of Wyo. STAT. § 6–3–301(a) and § 6–2–502(a)(ii) (1988). Appellant raises two issues on appeal:

I. Can one commit burglary in violation of Wyo.Stat. § 6–3–301(a) by entering or remaining in an unoccupied vehicle where a person may not reasonably be expected to be present?

II. Was the Appellant denied his right to a fair trial when the court below allowed into evidence two permissible suggestive pretrial identifications that so tainted the later in-court identification as to cause irreversible misidentification?

The state restructures the issues somewhat:

I. Does the Wyoming burglary statute, § 6–3–301(a), proscribe the unauthorized entry of a vehicle with intent to commit larceny or a felony therein?

II. Did the district court err in admitting into evidence the pre-trial photographic identification of appellant, or other in-court identification of appellant?

We affirm.

**FACTS**

Upon leaving the Mast Bar in Green River, Jack Carson noticed movement in his car which was parked in a back parking lot of the bar. He observed a figure move from the back seat to the front seat, and then exit from the passenger side window.

As Carson moved closer, the figure he had seen getting out of his car attacked him with a twelve to fourteen inch-long screwdriver and threatened to "shove or ram" the screwdriver through his "guts." Carson fought off his assailant for several minutes, but suffered two stab wounds to his face. Following the attack, Scott fled. Scott had gained entry to Carson's Bronco II by breaking out a wing window on the passenger side. Although nothing was taken from Carson's car, there was obvious evidence that someone had attempted to pry the stereo out of the vehicle. The attacker was later identified as the appellant, Danny Lee Scott.

Carson had seen the man who assaulted him in the Mast Bar earlier that evening as he was talking with two women known as Tia and Randi. After the attack, Carson went back into the Mast to seek aid. While there, he told Tia and Randi that the man who attacked him had been talking to them earlier in the evening. Both women immediately identified that individual as Scott.

Carson was always certain he could identify his attacker, having first seen him in the Mast earlier in the evening and then having clearly seen him during the attack. He gave a detailed description of Scott to the police shortly after the incident. Eventually, Randi saw Scott at another bar in Rock Springs and reported that to the police. Scott was arrested and a police detective took a polaroid photograph of him wearing the hat he had been described as wearing the night of the attack. That picture was placed in an album containing photographs of about 180 male individuals. Approximately sixty photographs appeared in the first half of the album; all were of the same general quality (color polaroid photos); and all were of white males of varying age. With the exception of the "fu manchu" moustache, virtually all of the persons shown could have fit the general features of the description given. Scott's picture was seventeenth from the front of the album; Carson identified Scott immediately and was certain of that identification; he was equally as certain of his identification when he observed Scott in the courtroom at his trial. Appellant complains,

however, that the prosecutor showed Carson the photograph of Scott just before he entered the courtroom to give his testimony and make his identification.

### ISSUE I

■ As his first issue, Scott contends that he did not commit burglary as that crime is defined by the plain and unambiguous language of WYO.STAT. § 6–3–301(a). That statute provides:

A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portions thereof, with intent to commit larceny or a felony therein.

Scott argues that the operative phrase here is "occupied structure or vehicle." He states that the word "occupied" modifies the word "structure" and the word "vehicle." According to his reading, to commit burglary one must enter either an "occupied structure" or an "occupied vehicle." Scott then points to the facts of his case as showing that the Carson vehicle was not occupied when he entered it. He reasons, therefore, he could not have committed the crime of burglary as set forth by the plain and unambiguous statutory language.

Our recent decision in *Collins v. State*, 854 P.2d 688 (Wyo.1993), answers this issue. Against an identical contention as made by Scott here, we there held "that the crime of burglary as defined by WYO.STAT. § 6–3–301(a) can be committed by the unauthorized entry of any vehicle, whether a person is present or not, with the intent to commit larceny therein." *Collins*, at 696. Our holding in *Collins* is dispositive here.

### ISSUE II

In his second issue, Scott argues that impermissibly suggestive identification procedures were employed by police officers and that his conviction must be reversed because of them. In our review of such an issue, we employ this analytical model:

In determining whether the identification was sufficiently reliable, we weigh a number of factors against the corrupting influence of the identification procedure. We consider whether time and environmental conditions gave the witness an ample opportunity to view the perpetrator of the crime at the scene. We also examine the degree of the witness' attention to the perpetrator at that time, giving due regard to whether the witness was casually or intimately involved in the criminal event, and whether the witness had any special training or experience in making observations or identifications. Next, we analyze the accuracy of any description the witness may have given prior to identifying a suspect, in terms of the time lapse between the event and the description, the extent of the characteristics described, and the extent to which those characteristics peculiarly identify the suspect. Finally, we consider the certainty with which the witness identified the suspect and the time that elapsed between the criminal encounter and the later identification.

*Green v. State*, 776 P.2d 754, 756 (Wyo. 1989).

■ The circumstances presented in the instant case are similar to the circumstances we reviewed in *Green*. Here, after reviewing the photo album, we can reach a conclusion that the photographic lineup was not impermissibly suggestive. *Green*, 776 P.2d at 756; *State v. Trimble*, 371 N.W.2d 921 (Minn.App.1985); *Peters v. State*, 725 P.2d 1276, 1278 (Okl.Cr.1986). *See also*, FERDINAND S. TINIO, Annotation, *Admissibility of Evidence of Photographic Identification As Affected by Allegedly Suggestive Identification Procedures*, 39 A.L.R.3d 1000, § 3[b] (1971 & Supp.1992) (defendant's photograph with distinctive marking or feature); 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURES § 7.4(e) (1984 & Supp.1991).

■ The initial identification of Scott was, therefore, not corrupted by any impermissibly suggestive quality, but it was improper for the prosecutor to show the photograph to Carson just before he entered the courtroom. We find, however, that Carson's identification of Scott was sufficiently reliable to satisfy the demands of

the due process. Carson was able to observe Scott closely before and during the attack. His attention was focused on Scott during much of the attack, and there was adequate street lighting to make observation possible. Carson gave a detailed description immediately after the attack; further, he identified his attacker as the man who had been in the Mast for a couple of hours just before the attack took place. The description he gave closely matched Scott's physical features. Carson immediately recognized Scott both in the photo album and in the courtroom and was absolute in his certainty. Thus, we find no error in the admission of either his photographic identification or his in-court identification. *Green,* 776 P.2d at 756.

The judgment and sentence of the district court is affirmed.