Eugene HOGAN, Jr., Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 94–275.

Supreme Court of Wyoming.

Dec. 12, 1995.

Sylvia Lee Hackl, State Public Defender; Gerald M. Gallivan, Defender Aid Program; and Keith M. Gingery, Student Intern for the Defender Aid Program, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and Dee Morgan and Emilyanne Marrs, Student Interns for the Prosecution Assistance Program, for Appellee.

Before THOMAS, MACY, TAYLOR and LEHMAN, JJ., and BARTON R. VOIGT, District Judge.

MACY, Justice.

Appellant Eugene Hogan, Jr. appeals from the judgment and sentence which was entered after a jury found him guilty of two counts of delivery of cocaine and one count of conspiracy to deliver narcotics.

We affirm.

## ISSUES

Appellant presents the following issues for our review:

I. Whether the trial court erred by denying the request of defense counsel to allow the defendant to sit with another man for identification purposes by a witness since there was a substantial likelihood of irreparable misidentification?

II. Whether Appellant was denied his constitutional right to a speedy trial under the U.S. Constitution, Amendment 6 and the Wyoming Constitution, Article I, § 10?

## FACTS

In August of 1993, an informant, who was working on a controlled buy for the Laramie County sheriff's department, was instructed to purchase narcotics from Appellant. The informant knew who Appellant was because they had previously been introduced. On August 10, 1993, the informant went to Appellant's house to purchase some cocaine; however, Appellant did not have any at that time. Appellant told the informant that he would have some more available on August 12, 1993. On that date, the informant, who had been provided with money as well as with a listening device, went back to Appellant's home to buy some cocaine. Although the informant had enough money for only one gram of cocaine, Appellant told him that he could take two grams and pay for the second gram the next day. On August 13, 1993, Appellant went to the informant's house where he received payment for the second gram of cocaine.

From August 12, 1993, until August 23, 1993, the informant saw Appellant at least every other day. On August 23, 1993, the informant purchased more cocaine as well as marijuana from Appellant. The informant also inquired as to whether it would be possible for them to make a bigger deal at a later date. Appellant told him that it would be, and they tentatively made a deal for a quarter of a pound of cocaine. After the informant departed, the police arrested Appellant.

An information was filed, charging Appellant with one count of conspiring to deliver a controlled substance on August 10, 1993, one count of delivering a controlled substance on August 12, 1993, and one count of delivering a controlled substance on August 23, 1993. A preliminary hearing was scheduled for August 31, 1993, but Appellant waived that hearing. Appellant was released from custody on August 31, 1993. Although an arraignment had been scheduled for September 16, 1993, it did not occur, and Appellant never entered a plea on the initial charges which had been filed against him. On December 2, 1993, when it became apparent that a trial would be required, a new information was filed, charging Appellant with one count of delivering cocaine on August 12, 1993, one count of delivering cocaine on August 23, 1993, and one count of conspiring to deliver cocaine on August 23, 1993. The original information was dismissed the following day because it erroneously alleged that the conspiracy to deliver cocaine occurred on August

10th rather than on August 23rd. Appellant was arrested in mid-December. Following a preliminary hearing which was held on December 21, 1993, Appellant was bound over on all three counts and released on bond.

Appellant was arraigned on January 12, 1994. After he entered a not guilty plea, the trial court set March 21, 1994, as a jury trial date. Appellant filed a motion to dismiss on February 1, 1994, for denial of his right to have a speedy trial in which he alleged:

15. The total time that will have elapsed from Defendant's initial arrest on August 23, 1993, and his trial date on March 21, 1994, is 211 days. Time elapsed from his initial arraignment date on September 16, 1993, and the trial date, is 187 days. None of this delay has been caused by the Defendant.

16. The delay in this case is excessive and violates the Defendant's statutory and constitutional rights to a speedy trial.

The trial court denied this motion.

The trial began on May 9, 1994. At the conclusion of the trial, the jury found Appellant guilty of all three of the charged crimes. The trial court sentenced Appellant to serve a term in the Wyoming Department of Corrections of not less than four and one-half years nor more than six and one-half years on each count with the sentences to run concurrently. Appellant appeals from his judgment and sentence.

## DISCUSSION

### A. In–Court Identification

■ Appellant asserts that the informant's in-court identification of him was tainted because an unduly suggestive circumstance existed since he was the only black man seated at the defense table.

■ The decision of whether to allow an in-court lineup or another identification procedure is within the sound discretion of the trial court. *See, e.g., United States v. Sebetich,* 776 F.2d 412, 420 (3d Cir.1985), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988); *United States v. Williams,* 436 F.2d 1166, 1168 (9th Cir.1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971).

There is no constitutional entitlement to an in-court line-up or other particular methods of lessening the suggestiveness of in-court identification, such as seating the defendant elsewhere in the room. These are matters within the discretion of the court.

*United States v. Domina,* 784 F.2d 1361, 1369 (9th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

We define judicial discretion as "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986). The ultimate issue is whether or not the court could reasonably conclude as it did.

*Cavender v. State,* 860 P.2d 1162, 1164 (Wyo. 1993) (citation omitted). Abuse of discretion occurs only when the in-court identification procedures are " ' "unnecessarily suggestive and conducive to irreparable misidentification." ' " *Williams,* 436 F.2d at 1168–69 (quoting *Stovall v. Denno,* 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967))." *Domina,* 784 F.2d at 1369. If we were to conclude that the identification was unnecessarily suggestive and not sufficiently reliable, admission of the identification would be violative of due process. *McCone v. State,* 866 P.2d 740, 748 (Wyo.1993).

This court follows the United States Supreme Court's two-pronged approach when determining whether witness identifications violate due process. First, we determine whether the identification procedures were unnecessarily suggestive, *i.e.,* was the procedure surrounding the identification suggestive and if so were there good reasons why less suggestive procedures were not used. Second, if we determine that the identification procedures were unnecessarily suggestive, we look to the totality of the circumstances to discern whether the unnecessarily suggestive identification was otherwise reliable. In other words we

weigh a number of factors against the corrupting influence of the identification procedure. We consider whether time and environmental conditions gave the witness an ample opportunity to view the perpetrator of the crime at the scene. We also examine the degree of the witnesses' attention to the perpetrator at that time, giving due regard to whether the witness was casually or intimately involved in the criminal event, and whether the witness had any special training or experience in making observations or identifications. Next, we analyze the accuracy of any description the witness may have given prior to identifying a suspect, in terms of the time lapse between the event and the description, the extent of the characteristics described, and the extent to which those characteristics peculiarly identify the suspect. Finally, we consider the certainty with which the witness identified the suspect and the time that elapsed between the criminal encounter and the later identification.

866 P.2d at 747–48 (quoting *Green v. State,* 776 P.2d 754, 756 (Wyo.1989)).

■■■■ We do not deem that the identification procedure used in this case was unnecessarily suggestive. We agree with the statements that the Connecticut Supreme Court made when it said:

"[W]ithout more, the mere exposure of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned." (Citations omitted.) *Middletown v. United States,* 401 A.2d 109, 132 (D.C.App.1979).

"We know of no authority which would prohibit, as unduly suggestive, an exclusively in-court identification." *State v. Nelson,* ... [4 Conn.App. 514] 495 A.2d 298 [ (1985) (citation omitted) ]. The defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination.

*State v. Smith,* 200 Conn. 465, 512 A.2d 189, 193 (1986).

■■ Had we determined that the procedure used in this case was unnecessarily suggestive, the totality of the circumstances would have demonstrated that the identification was otherwise reliable. The informant had an ample opportunity to view Appellant during the events in question. This was not a case which involved a single, hurried encounter between a criminal and an identifying witness. The informant knew who Appellant was before the first sale of cocaine was made and associated with him on a number of occasions until the second sale was made. Both sales occurred at Appellant's home. The police officers knew Appellant, and they were conducting a surveillance of his home during both transactions. It is apparent that the informant knew Appellant quite well and that the informant had an excellent opportunity to observe Appellant before he made the in-court identification.

The informant also had sufficient opportunity and incentive to pay close attention to Appellant during their face-to-face drug transactions. In carrying out his duties for the police, the informant reported on the various activities he had been involved in with Appellant. The informant's description of Appellant was reliable as well. The informant knew Appellant's name, as did the police, and Appellant's arrest which immediately followed the second cocaine sale was indicative of the fact that the description was correct. The informant identified Appellant at trial with a high degree of certainty. He identified him directly and without any hesitation. We have difficulty imagining how the identification could have been any better than having the informant know Appellant, know that Appellant was the person who was involved in the transactions, and testify that the person who was seated at the defense table was the correct defendant. Even though the in-court identification occurred approximately nine months after the transactions had transpired, this time was not sufficiently long so as to undermine the reliability of the informant's recollection given that he knew Appellant and had numerous encounters with him.

■ Special procedures for in-court identifications are necessary only when the following factors exist:

(1) identification is a contested issue; (2) the defendant has moved in a timely manner prior to trial for a lineup; and (3) despite that defense request, the witness has not had an opportunity to view a fair out-of-court lineup prior to his trial testimony or ruling on the fairness of the out-of-court lineup has been reserved.

*United States v. Archibald,* 756 F.2d 223, 223 (2d Cir.1984).

Before the State called the informant as a witness, the following colloquy occurred between Appellant's counsel and the trial court:

[APPELLANT'S COUNSEL]: Your Honor, to fill you in that, I'm concerned that the defendant will be easily identifiable with just the two of us at counsel table, so I've arranged to have him move to the back of the courtroom.

THE COURT: Request is denied. The defendant will remain at counsel table.

The informant thereafter described the various drug transactions he had with Appellant, and he identified Appellant as being the person with whom he had been involved in those transactions.

Appellant made his request for relocation without providing any explanation as to why the relocation was appropriate or necessary to guard against misidentification. Absent some indication that misidentification was likely or that identity was a contested issue, the trial court was not under any obligation to allow such a procedure. Furthermore, Appellant never made a request for a pretrial lineup, nor did he present the trial court with the request that he be allowed to sit at the back of the courtroom before the arrangements had already been made for him to relocate.

Appellant did not make an objection to the informant's in-court identification of him. Under such circumstances, we would ordinarily review Appellant's contention that his in-court identification was so suggestive that it resulted in a substantial likelihood of irreparable misidentification under the plain error standard. In this case, however, we do not need to apply the plain error doctrine because we are not able to discern any error in the in-court identification.

**B. Speedy Trial**

■ Appellant contends that he was denied his constitutional right to have a speedy trial. He asserts that W.R.Cr.P. 48(b)(2), which provides that "[a] criminal charge shall be brought to trial within 120 days following arraignment," identifies the wrong starting point for determining whether a defendant has been given a speedy trial and is, therefore, constitutionally inaccurate. He propounds that the starting point should be at the time when the arrest is made or when the information or indictment is filed. He also presents an extensive analysis of the four factors which we utilized to consider claimed violations of the speedy trial right when Rule 204 of the Uniform Rules for the District Courts of the State of Wyoming was in effect. When the United States Supreme Court adopted this analysis in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), it stated:

We do not establish procedural rules for the States, except when mandated by the Constitution. We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. *The States, of course, are free to prescribe a reasonable period consistent with constitutional standards,* but our approach must be less precise.

407 U.S. at 523, 92 S.Ct. at 2188 (emphasis added). Consistent with the suggestion in *Barker,* this Court adopted W.R.Cr.P. 48.

In accordance with W.R.Cr.P. 48, we calculate the length of a delay by excluding the time periods specified in W.R.Cr.P. 48(b)(3). *McDermott v. State,* 897 P.2d 1295, 1300 (Wyo.1995). After those time periods have been excluded, delays of fewer than 120 days are permissible. *Id.* Pursuant to W.R.Cr.P. 48(b)(2), the responsibility to try Appellant in a timely fashion did not attach until he had been arraigned. *Id.*

Appellant's arraignment occurred on January 12, 1994. This arraignment was on the charges which had been filed on December 2, 1993, and for which Appellant was ultimately

convicted. While earlier charges were filed against Appellant, no arraignment was held on them prior to them being dismissed. Appellant's trial commenced on May 9, 1994—117 days after Appellant was arraigned. Since Appellant was brought to trial within 120 days after he was arraigned, his speedy trial right was not violated.

 Appellant suggests that the guarantee of a speedy trial would not be protected if the right were to attach only at the time when the arraignment occurs and not at the time when the arrest is made or when the information or indictment is filed.

Wyoming has no statute of limitations for criminal offenses, and prosecution for such offenses may be commenced at any time during the life of the offender. However, when a delay in bringing charges results in prejudice to a defendant, due process considerations may arise. In order to require dismissal of a charge, it is necessary that a preindictment delay cause "substantial prejudice to [appellant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Story [v. State]*, 721 P.2d [1020,] 1027 [ (Wyo.1986) ], *quoting from United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). Substantial prejudice requires the showing of the loss of a witness, exhibit or other evidence, the presence of which would probably bring a different result. *Phillips v. State*, 835 P.2d 1062, 1069 (Wyo. 1992) (some citations omitted). The burden of proof to make this required showing is on the defendant. *See United States v. Engstrom*, 965 F.2d 836, 838 (10th Cir.1992).

 Appellant contends that he was prejudiced because of the preindictment delay and, as support for that contention, he lists his pretrial anxiety, the loss of his job, having to send his son to live with a relative, and disruption of his life due to police surveillance and harassment. Conspicuously absent from this list is either a claim that Appellant was prejudiced in his ability to receive a fair trial because of the time which elapsed prior to his indictment or a claim that such a delay was an intentional device used by the State to gain a tactical advantage over him. Because Appellant failed to demonstrate either substantial prejudice or an intentional delay, we conclude that his due process right was not violated.

## CONCLUSION

We hold that the trial court did not err when it denied Appellant's request to sit in the back of the courtroom with another man for identification purposes and that Appellant was not denied his right to have a speedy trial.

Affirmed.