BURKE, Chief Justice.
[¶1] Appellant, Matthew Harl Majhanovich, challenges his conviction for delivery of a controlled substance, methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i) (LexisNexis 2015). He contends the photo identification procedure used by law enforcement during their investigation of the crime resulted in an unreliable identification. We affirm.
ISSUE
[¶2] Appellant presents the following issue:
Was the photographic identification procedure used by law enforcement so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification?
FACTS
[¶3] On April 19, 2016, Special Agent Cody Ruiz of the Wyoming Division of Criminal Investigation received information from a confidential informant indicating that approximately two pounds of methamphetamine would be delivered to Rock Springs, Wyoming later that day from Colorado. He learned that Aaron Alonso expected to receive some of the methamphetamine at his residence in Rock Springs. As a result, Agent Ruiz arranged for a team of law enforcement officers, including Detective James Rhea, to conduct surveillance of Mr. Alonso's residence.
[¶4] Later that evening, Detective Rhea observed Appellant arrive at Mr. Alonso's *154 residence in a black Chevy pickup. When Mr. Alonso exited his residence, he walked around the truck and got "a good look at" Appellant because his window was rolled down. Mr. Alonso recognized Appellant from previous instances in which he had seen him driving around. Mr. Alonso climbed into the rear passenger seat of the truck. Appellant then drove down the street, pulled over by a stop sign, and then turned around and returned to Mr. Alonso's residence. During this time, Mr. Alonso paid Appellant $200.00 for some methamphetamine. Detective Rhea observed Appellant as he drove away from Mr. Alonso's residence. Detective Rhea recognized the pickup and identified Appellant as the driver of the truck based on previous investigations involving Appellant. He relayed this information to Agent Ruiz.
[¶5] Agent Ruiz subsequently arrested and interviewed Mr. Alonso. During the interview, Mr. Alonso identified Appellant by his first name, "Matt," and admitted that he had purchased methamphetamine from him. Mr. Alonso then identified Appellant in a photograph after Agent Ruiz showed him a single photo and asked him, "[W]ho is this or is this Matt?"
[¶6] The State charged Appellant with one count of unlawful delivery of a controlled substance, methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i). Appellant entered a plea of not guilty and subsequently filed a "Motion in Limine to Exclude Evidence of Photo Identification." Appellant asserted that the presentation of a single photo to Mr. Alonso was an impermissibly suggestive identification procedure resulting in an unreliable identification.
[¶7] The district court held a hearing on the motion, and the State presented testimony from Detective Rhea and Agent Ruiz. Based on the totality of the circumstances, the court determined that the identification procedure was not impermissibly suggestive and that there was not a substantial likelihood of an irreparable misidentification. The court denied the motion.
[¶8] At trial, the State presented testimony from Detective Rhea, Agent Ruiz, and Mr. Alonso, and defense counsel was provided an opportunity to cross-examine each of the witnesses. Detective Rhea testified that he identified Appellant during his surveillance. Mr. Alonso identified Appellant as the person who sold him methamphetamine. Defense counsel did not cross-examine either witness about their identifications of Appellant and did not contest that he was in the vehicle with Mr. Alonso. He claimed that he was the purchaser of methamphetamine, rather than the seller. Appellant was convicted and sentenced to 10 to 13 years in prison. This appeal followed.
STANDARD OF REVIEW
[¶9] During the proceedings below, Appellant challenged the photo identification in a motion in limine . That motion was denied. In this appeal, however, Appellant does not specifically challenge the denial of that motion. Rather, Appellant asserts, generally, that the photo identification procedure violated his constitutional right to due process. The United States Supreme Court has recognized "a due process check on the admission of eyewitness identification," which applies "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." Perry v. New Hampshire , 565 U.S. 228, 232, 132 S.Ct. 716, 720, 181 L.Ed.2d 694 (2012). We review questions involving interpretation of constitutional rights de novo . Broussard v. State , 2017 WY 73, ¶ 8, 396 P.3d 1016, 1020 (Wyo. 2017).
DISCUSSION
[¶10] Appellant contends that the photo identification procedure used by law enforcement violated his right to due process of law. He claims that the showing of a single photograph to Mr. Alonso, accompanied by the question, "Is this Matt?", is impermissibly suggestive. He contends that, as a result of the identification procedure, there is a substantial likelihood that Mr. Alonso misidentified him. Accordingly, Appellant asserts that his conviction should be reversed and that the matter should be remanded for a new trial.
[¶11] We have stated that "The principal motive for excluding such evidence *155 is to keep eyewitness identifications from the jury where circumstances strongly suggest that the State caused the witness to make a mistake." Green v. State , 776 P.2d 754, 756 (Wyo. 1989). We use a two-part test to determine whether photographic identifications violate due process:
This court follows the United States Supreme Court's two-pronged approach when determining whether witness identifications violate due process. Green v. State , 776 P.2d 754, 756 (Wyo. 1989) ; Sears v. State , 632 P.2d 946, 948-49 (Wyo. 1981). First, we determine whether the identification procedures were unnecessarily suggestive, i.e., was the procedure surrounding the identification suggestive and if so were there good reasons why less suggestive procedures were not used. See generally , Wayne R. LaFave and Gerald H. Israel, 1 Criminal Procedure § 7.4(b) at 581 (1984) (citing Stovall v. Denno , 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) ). Second, if we determine that the identification procedures were unnecessarily suggestive, we look to the totality of the circumstances to discern whether the unnecessarily suggestive identification was otherwise reliable. Green , 776 P.2d at 756. In other words we
weigh a number of factors against the corrupting influence of the identification procedure. We consider whether time and environmental conditions gave the witness an ample opportunity to view the perpetrator of the crime at the scene. We also examine the degree of the witnesses' attention to the perpetrator at that time, giving due regard to whether the witness was casually or intimately involved in the criminal event, and whether the witness had any special training or experience in making observations or identifications. Next, we analyze the accuracy of any description the witness may have given prior to identifying a suspect, in terms of the time lapse between the event and the description, the extent of the characteristics described, and the extent to which those characteristics peculiarly identify the suspect. Finally, we consider the certainty with which the witness identified the suspect and the time that elapsed between the criminal encounter and the later identification.
Green , 776 P.2d at 756. If we conclude that the identification was unnecessarily suggestive and not sufficiently reliable, then admission of the identification is violative of due process.
McCone v. State , 866 P.2d 740, 747-48 (Wyo. 1993) ; see also Hogan v. State , 908 P.2d 925, 928-29 (Wyo. 1995).
[¶12] The parties dispute whether the identification procedures were impermissibly suggestive. Appellant cites cases from other jurisdictions which, he asserts, indicate that showing a single photograph to a witness is almost always unnecessarily suggestive. See, e .g ., State v. Ostrem , 535 N.W.2d 916, 921 (Minn. 1995) ("Single photo line-up identification procedures have been widely condemned as unnecessarily suggestive."). The State counters that this Court, in Taul v. State , 862 P.2d 649, 654 (Wyo. 1993), recognized that showing a single photograph of a suspect to a witness is not impermissibly suggestive if there is no improper comment or activity on the part of the police. We need not resolve this dispute, however, because we conclude that even if the procedure was impermissibly suggestive, the identification was sufficiently reliable to satisfy the demands of due process.
[¶13] In the present case, Agent Ruiz asked Mr. Alonso to confirm the identification of Appellant that Detective Rhea had already made during his surveillance. At the hearing on Appellant's motion to suppress Mr. Alonso's identification, Detective Rhea testified that he associated the vehicle that picked up Mr. Alonso with Appellant based on his previous investigations:
Mr. Majhanovich has been in and out of narcotics investigations with several of the agencies including mine for quite some time, especially around that time period. So there ha[d] been many instances in the past that I had observed Mr. Majhanovich driving that vehicle and followed that vehicle in a surveillance capacity.
Detective Rhea also ran the license plate on the vehicle, which revealed that the truck *156 was owned by Appellant. He further testified that, during his surveillance, he observed Appellant driving the vehicle as it passed him after leaving Mr. Alonso's residence, and after dropping Mr. Alonso off at his residence. He stated "They passed me again, driver's side to driver's side. I was able to identify Mr. Majhanovich was the driver then as well." Detective Rhea communicated his observations to Agent Ruiz.
[¶14] During Mr. Alonso's subsequent interview with Agent Ruiz, Mr. Alonso identified Appellant by his first name, "Matt," and gave an account of his encounter with Appellant that was consistent with Detective Rhea's observations. Agent Ruiz then showed Mr. Alonso a jail photograph of Appellant and asked, "[W]ho is this or is this Matt?" During the motion hearing, Agent Ruiz explained that, because he knew that Detective Rhea had identified Appellant during his surveillance, "we just needed the corroboration from Mr. Alonso."
[¶15] Based on the witnesses' testimony at the hearing on Appellant's motion, the district court denied the motion and determined the identification issue could be adequately explored through cross-examination at trial. The defendant's right of cross-examination is one of several safeguards the Supreme Court identified in Perry v. New Hampshire that help ensure the reliability of eyewitness identifications. The Court noted, first, that "the jury, not the judge, traditionally determines the reliability of evidence." Id. , 565 U.S. at 245, 132 S.Ct. at 728. It then proceeded to set forth additional protections against the use of an unreliable identification:
We also take account of other safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability. These protections include the defendant's Sixth Amendment right to confront the eyewitness. See Maryland v. Craig , 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant."). Another is the defendant's right to the effective assistance of an attorney, who can expose the flaws in the eyewitness' testimony during cross-examination and focus the jury's attention on the fallibility of such testimony during opening and closing arguments. Eyewitness-specific jury instructions, which many federal and state courts have adopted, likewise warn the jury to take care in appraising identification evidence. See, e.g. , United States v. Telfaire , 469 F.2d 552, 558-559 (C.A.D.C. 1972)(per curiam) (D.C. Circuit Model Jury Instructions) ("If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care."). See also [Kansas v. ]Ventris , 556 U.S. [586], at 594, n. *, 129 S.Ct. 1841 [173 L.Ed.2d 801 (2009) ] (citing jury instructions that informed jurors about the unreliability of uncorroborated jailhouse-informant testimony as a reason to resist a ban on such testimony); Dowling [v. U.S. ], 493 U.S. [342], at 352-353, 110 S.Ct. 668 [107 L.Ed.2d 708 (1990) ]. The constitutional requirement that the government prove the defendant's guilt beyond a reasonable doubt also impedes convictions based on dubious identification evidence.
Id. , 565 U.S. at 245-47, 132 S.Ct. at 728-29 (footnote omitted).
[¶16] Although Appellant challenges the identification in this appeal, at trial, he made no attempt to take advantage of the procedural safeguards identified in Perry . He did not cross-examine any of the witnesses with respect to either the pretrial or in-court identifications. Indeed, he completely abandoned the identification issue at trial, and claimed, as a defense to the charges, that Mr. Alonso had sold methamphetamine to him. Appellant has not presented any legal authority that would support a finding of a due process violation under such circumstances.
[¶17] In any event, however, we conclude the identification was sufficiently reliable to satisfy the demands of due process. Mr. Alonso was not merely a casual witness who got a "fleeting glimpse" of Appellant's criminal activities. Rather, he was a participant in the transaction with Appellant and spent several minutes in close proximity to Appellant *157 in his vehicle while purchasing methamphetamine from him. Mr. Alonso was "intimately involved in the criminal event." McCone , 866 P.2d at 748. Further, Mr. Alonso confirmed in his trial testimony that he got "a good look at" Appellant. Although he had not previously met Appellant, Mr. Alonso recognized him "from previous times when [he] saw him driving around." During his interview with Agent Ruiz, Mr. Alonso expressed certainty in his identification of Appellant. That interview occurred within a few hours of the events at issue. Additionally, Mr. Alonso's identification corroborated Detective Rhea's identification, which was based on his independent surveillance of the events in question and his prior experience with Appellant. Under the totality of the circumstances, we find no substantial likelihood of misidentification as a result of the identification procedure used by law enforcement. Mr. Alonso's identification was sufficiently reliable to satisfy due process. As a result, we find no error in the admission of Mr. Alonso's identification.
[¶18] Affirmed.